IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiffs,<br><br>     v.<br><br>JOHN WAYS JR., FRANK FIROZ, CHRISTIAN FIROZ, RHONDA DECAMP, CONSTANCE HAGELSTEIN, JOSHUA WELLBORN, ALAN DAVIS, MARK COONEY, MICHAEL BLACKSTONE, DAVID ROBERTS, NKOSI, INC., a Nebraska corporation, and JEANETTE BELK,<br><br>                Defendants. | 8:12CR391<br><br>MEMORANDUM AND ORDER |

This matter is before the court on an amended motion to suppress filed by defendant John Ways, Jr., Filing No. 303. The court conducted a hearing on the motion on April 15, 2014. Defendant Ways seeks suppression of evidence obtained in searches and seizures of vehicles, real property, businesses, and bank accounts in Omaha, Lincoln, and South Sioux City, Nebraska, and Council Bluffs, Iowa, on September 12, 2012, and December 18, 2012, and suppression of the statements made by Ways to law enforcement officers thereafter.

Defendant, along with several others, has been charged in a superseding indictment with conspiring to sell and to offer to sell drug paraphernalia, in violation of 21 U.S.C. § 863(a)(1) and 846; conspiring to distribute and to possess with intent to distribute certain Schedule I controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C);[1] and conspiring to launder the proceeds of unlawful

---

[1] Those controlled substances are: 3,4-methylenedioxyprovalerone ("MDPV"), 3,4-methylenedioxy-methcathinone ("Methylone"), 1-pentyl-3-( 4-methly-1-naphthoyl)indole ("JWH-122"), 1-

transactions, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and 1956(a)(1)(B)(ii), in violation of 18 U.S.C. § 1956(h); and defendant Ways has also been charged with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). Filing No. 155, Superseding Indictment. The superseding indictment also contains a forfeiture allegation with respect to currency and bank accounts, drug paraphernalia, ammunition and gun safes, computers and equipment, and vehicles. *Id.* at 12-17.

He challenges the probable cause for the search warrants, contending that the affidavits supporting the warrant applications were based on unreliable information provided by a confidential informant. He also argues that the warrants are based on information gleaned in an investigation that occurred before the sale of cannabinoids was criminalized in the Synthetic Drug Abuse Prevention Act, PUB. L. NO. 112-144, *codified at* 21 U.S.C. § 811 and 812, and are therefore based on suspicion of activities that were not criminal at the time. Defendant Ways argues that although the Synthetic Drug Abuse Prevention Act was signed into law by the President on July 9, 2012, it did not become effective until October 1, 2012. He also contends that any statements that he gave to law enforcement are fruits of the illegal searches and seizures of the defendant's property.

## FACTS

The government submits Indices of Evidence in support of its opposition to the defendant's motion. *See* Filing No. 326, Filing No. 327 and Filing No. 328. The

---

pentyl-3-(2-methoxyphenlacetyl)indole ("JWH-250"), 1-pentyl-3-(1-naphthoyl)indole ("JWH-0 18"), 1-pentyl-3-(2-chlorophenylacetyl)indole ("JWH-203") and 1-(5-fluoropentyl)-3-(1-naphthoyl)indole ("AM2201"). These substances have a chemical structure which is substantially similar to a Schedule I controlled substance, have pharmacological effects substantially similar to or greater than a Schedule I controlled substance, and are considered to be "controlled substance analogues." *See* 21 C.F.R. Part 1308; 21 U.S.C. § 811(h).

applications, warrants and affidavits authorizing the searches were offered and received into evidence at the hearing. See Filing No. 334, Exhibit List, Exs. The warrant applications are based on the affidavits of Special Agent Paul White of the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). *See id.*, Exs. 1-28. The affidavits state that "[t]he [confidential informant] has been used extensively by ATF and [the Omaha Police Department] for a period of several years and has always been considered reliable." *See, e.g., id.*, Ex. 1 at 9. The affidavits also relate that as part of his investigation, he obtained and examined subpoenaed bank records of the accounts of defendant Ways and defendant NKOSI, Inc., which reflected frequent large deposits of United States currency into several business and personal accounts. *Id.* at 13. He determined that Ways managed and ran several "head shop" businesses, known for selling glass smoking pipes, bongs, scales, drug packaging supplies, drug paraphernalia items, sex toys, and other miscellaneous novelty items. *Id.* He also determined that defendant Ways was selling synthetic cannabinoid substances known as "Bath Salts," "Glass Cleaner," and "K-2" at the businesses. *Id.* at 8-9. Omaha Police Department narcotics detectives, using a confidential informant, conducted several controlled buys of substances sold at the head shops, which were later tested and found to be controlled substances. *Id.* at 9-10, 12. Special Agent White also made several controlled buys in an undercover capacity. *Id.* at 11-13. Other undercover officers also made controlled buys. *Id.* at 14-15. The controlled buys at issue occurred from April 13, 2012, to August 15, 2012. *Id.* at 9-15.

Special Agent White and other officers also conducted surveillance of Ways to determine where he lived and what vehicles he owned. *Id.* at 16-18. Information was

3

also provided to the law enforcement officers by a confidential source who had once worked at one of the head shops. *Id.* at 18-23.

Agent White was aided in an investigation of the defendant's finances and those of NKOSI, Inc., and Exotica by ATF Asset Forfeiture Investigator Robert Hawkins, who analyzed the banking records and determined that numerous checks were written from Ways's accounts to businesses around the United States that sell drug paraphernalia. *Id.* at 23. He determined that deposits into the defendant's personal accounts represented the laundered proceeds of the sales of drug paraphernalia and controlled substances. *Id.* at 24-36.

Similar affidavits were submitted in support of all of the warrant applications. Filing No. 326, Index of Evid., Exs. 2-10; Filing No. 327, Index of Evid., Exs. 11–20; Filing No. 328, Exs. 21-30.

**LAW**

The Fourth Amendment requires that search warrants be based on probable cause. *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009). The existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013); *United States v. Vega*, 676 F.3d 708, 717 (8th Cir. 2012) (stating that the warrant application and affidavit must describe circumstances showing that, based on practical experience and common sense, there is a fair probability that contraband or similar evidence will be found in the targeted place).

"Where probable cause depends upon information supplied by an informant, '[t]he core question . . . is whether the information is reliable.'" *Id.* (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). Information may be sufficiently reliable to support a probable cause finding if it is corroborated by independent evidence. *Keys*, 721 F.3d at 518. "'If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.'" *Id.* (quoting *Williams*, 10 F.3d at 593). "'Even the corroboration of minor, innocent details can suffice to establish probable cause.'" *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013) (quoting *United States v. Solomon*, 432 F.3d 824, 828 (8th Cir. 2005)).

When the issuing court relies solely on an affidavit to establish probable cause, only the information "'found within the four corners of the affidavit may be considered.'" *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003) (quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)). "The affidavit must provide the issuing court with a substantial basis to support a finding of probable cause; wholly conclusory statements that the affiant 'has cause to suspect and does believe that' illegal activity is occurring 'will not do.'" *United States v. Tripp*, 370 Fed. App'x 753, 757 (8th Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). The affidavit for a search warrant should be examined using a common-sense, non-technical approach. *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008). Courts look to the totality of the circumstances to determine whether information provided by a confidential informant is reliable so as to support a finding of probable cause. *Gates*, 462 U.S. at 233-34. A

5

reviewing court should afford great deference to the probable cause determination of the issuing judge. *Hudspeth*, 525 F.3d at 674.

The Synthetic Drug Abuse Prevention Act of 2012 amended 21 U.S.C. §§ 811 and 812 to include cannabimimetic agents as Schedule I controlled substances. *See* Synthetic Drug Abuse Prevention Act of 2012, Pub. L. No. 112-144, §§ 1151-53, 126 Stat. 993, *1130-*1132. The statute was enacted as part of the Food and Drug Administration Safety and Innovation Act ("FDA Safety and Innovation Act") which amended the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* FDA Safety and Innovation Act*,* Pub. L. No. 112-144, §§ 101-1143, 126 Stat. 993, *993-*1130 (2012). The amendments regulate drugs, medical devices, generic drugs, antibiotics, and misbranding, and impose certain fees and reporting requirements on drug manufacturers. *Id.*

Titles I – IV of the Safety and Innovation Act contain "effective date" provisions, stating that "the amendments made by this title shall take effect on October 1, 2012, or the date of the enactment of this Act, whichever is later . . . ." *Id.*, §§ 106, 206, 305 & 405, Pub. L. No. 112-144, 126 Stat. 993, *1002; *1006, *1025, & *1039 (2012). By their terms, the provisions establishing an effective date of October 1, 2012, are limited to the amendments under Titles I-IV. *See id.*

The Synthetic Drug Abuse Prevention Act of 2012 provisions appear in Subtitle D to Title XI, under the "other provisions" section of the Safety and Innovation Act. Synthetic Drug Abuse Prevention Act, Pub. L. No. 112-144, §§ 1151-1153, 126 Stat. 993, *1129-*1132. "[T]he general rule that when a statute has no effective date, "absent a clear direction by Congress to the contrary, [it] takes effect on the date of its

6

enactment." *Johnson v. United States*, 529 U.S. 694, 702 (2000) (quoting *Gozlon–Peretz v. United States*, 498 U.S. 395, 404 (1991); *see United States v. York*, 830 F.2d 885, 892 (8th Cir. 1987). The FDA Safety and Innovation Act, including the Synthetic Drug Abuse Prevention Act of 2012, was enacted and signed by the President on July 9, 2012. *Id.*, 126 Stat. 993, *1132; *see* 21 U.S.C. § 812 note (legislative enactments).

In order to combat the "designer drug" problem, the Attorney General is authorized under 21 U.S.C. § 811(h) to use an expedited procedure to temporarily schedule a substance as a controlled substance on an emergency basis.[2] *Touby v. United States*, 500 U.S. 160, 164 (1991). To do so, the DEA must find that it is necessary to temporarily schedule a substance in schedule I "to avoid an imminent hazard to the public safety." 21 U.S.C. § 811(h)(1). The expedited procedure requires the DEA to consider three factors before reaching an "imminent hazard" determination, instead of the eight factors required for permanent scheduling under the standard § 811(c) rulemaking procedures.[3] *Touby*, 500 U.S. at 163.

Even before the Synthetic Drug Abuse Prevention Act was passed, the DEA had exercised its authority under 21 U.S.C. § 811(h) to list five synthetic substances on Schedule I on a temporary basis. *See United States v. Nasir*, 2013 WL 5373691 (E.D. Ky. Sept 25, 2013). On November 24, 2010, the DEA issued a notice of intent to place 1-pentyl-3-(1-naphthoyl)indole (JWH-018), 1-butyl-3-(1-naphthoyl)indole (JWH-073), 1-

---

[2] The Attorney General has delegated these powers to the Drug Enforcement Agency ("DEA"). *See* 28 CFR § 0.100(b) (1990).,

[3] These are (1) the drug's "history and current pattern of abuse;" (2) "[t]he scope, duration, and significance of abuse;" and (3) "[w]hat, if any, risk there is to the public health." 21 U.S.C. § 811(h)(3). In addition, the DEA considers "actual abuse, diversion from legitimate channels, and clandestine importation, manufacture, or distribution." *Id.* § 811(c)(4), (5), (6); *id.* § 811(h)(3). "Rather than comply with the APA notice-and-hearing provisions, the Attorney General need provide only a 30-day notice of the proposed scheduling in the Federal Register." *Touby*, 500 U.S. at 163.

7

[2-(4-morpholinyl)ethyl]-3-(1-naphthoyl)indole (JWH-200), 5-(1,1-dimethylheptyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (CP-47,497), and 5-(1,1-dimethyloctyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (cannabicyclohexanol; CP-47,497 C8 homologue) into Schedule I of the Controlled Substances Act. Schedules of Controlled Substances: Temporary Placement of Five Synthetic Cannabinoids Into Schedule I, Notice of Intent, 75 Fed. Reg. 71635, 71636 (Nov. 24, 2010) (to be codified at 21 C.F.R. pt. 1308). On March 1, 2011, the DEA issued its final order temporarily placing those cannabinoids on the list of Schedule I controlled substances. Schedules of Controlled Substances: Temporary Placement of Five Synthetic Cannabinoids Into Schedule I, Final Order, 76 Fed. Reg. 11075 (March 1, 2011) (to be codified at 21 C.F.R. pt. 1308).

## DISCUSSION

The court first finds that Special Agent White's affidavits were more than sufficient to establish probable cause for the issuance of the search and seizure warrants. The confidential informant had been used in the past and had given reliable information. The information was independently corroborated by the affiant's own controlled undercover buys and those of other officers, as well as by surveillance. Further, the evidence was corroborated by examination of bank records and by independent observations. The affidavits described the premises to be searched with particularity. Under the totality of the circumstances, the court finds there was probable cause for the warrants.

The court rejects the defendant's argument that the investigation involved acts that were not criminal in nature. The defendant is charged with conspiracy to sell drug paraphernalia and conspiracy to launder ill-gotten gains. That conduct was criminalized

long before the events at issue and was properly the subject of investigation. Moreover, distribution of 1-pentyl-3-(1-naphthoyl)indole ("JWH-0 18") was listed as a Schedule I controlled substance on March 1, 2011, and the other substances were added in the Synthetic Drug Abuse Prevention Act of 2012, which became effective upon its enactment on July 9, 2012. The superseding indictment charges that the conspiracy to distribute and possess with intent to distribute the Schedule I controlled substances at issue began on "an unknown date but at least as early as July 9, 2012, up to and including September 13, 2012." Filing No. 155, Superseding Indictment at 2. Accordingly, the court finds the defendant's motion to suppress should be denied.

IT IS ORDERED that defendant Way's motion to suppress (Filing No. 303) is denied.

Dated this 23rd day of April, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge